# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPITECH, INC., a corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>COOPER WIRING DEVICES, INC., a corporation; COOPER INTERCONNECT, INC., a corporation; DOES 1 through 30.<br><br>　　　　　Defendants. | Case No.: 11-cv-1693-JM-WVG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket No. 10 |

　　　　Plaintiff Epitech, Inc. ("Epitech") filed a complaint against Cooper Industries, PLC in San Diego County Superior Court in June 2011, alleging false promise and breach of contract. Defendant removed the action to this court, and thereafter the court dismissed the false promise claim under Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to meet the pleading requirements of Fed. R. Civ. P. 9(b). On November 15, 2011, Epitech filed its first amended complaint ("FAC") against Cooper Wiring Devices, Inc. and Cooper Interconnect, Inc. (collectively "Cooper" or "Defendant"), alleging breach of contract and fraudulent deceit. Cooper once again moved to dismiss the fraud-based claims, or, alternatively, to strike portions of the complaint. Because the

1

FAC does not sufficiently state a claim for fraudulent deceit, the motion to dismiss is GRANTED.

## I. BACKGROUND

In August 2010, the United States government awarded Epitech a contract to manufacture "a certain cable and wire harness assembly." FAC ¶ 8. Epitech soon obtained a quotation from Cooper for the sale of an electrical connector that Epitech intended to use in fulfilling the government contract. ¶ 9. In the quotation, Cooper represented that there was an International Traffic in Arms Regulation ("ITAR") prohibiting Cooper from obtaining the connector from certain suppliers. ¶ 9. Under the terms of the quotation, Cooper would sell the connector to Epitech for $5.45 per unit during the time the ITAR was in effect. ¶ 9. The quotation also stated that when the ITAR was lifted and Cooper was able to obtain the connector from a less expensive supplier, it would sell the connector to Epitech for a lower price. ¶ 9. Epitech accepted the offer through a purchase order issued to Cooper on September 28, 2010. ¶ 14.

The FAC alleges that Cooper "failed to abide by [its] promise and continued charging EPITECH the unit price of $5.45 once the ITAR restriction had been removed." ¶15. Based on these allegations, the FAC contains two claims based on fraudulent deceit under Cal. Civ. Code §§ 1709-10 and one claim for breach of contract. Cooper moves to dismiss only the causes of action based on fraudulent deceit.

## II. LEGAL STANDARD

Plaintiff purports to state claims under Cal. Civ. Code § 1710(3) and Cal. Civ. Code § 1710(4); however, §1710 is merely a section that lists definitions relevant to Cal. Civ. Code §1709, which provides a cause of action for fraudulent deceit. Thus, each of Plaintiff's first two claims is for fraudulent deceit, which occurs when an actor "willfully deceives another with intent to induce him to alter his position to his injury or risk." Cal. Civ. Code § 1709. Section 1710 provides four different definitions for deceit, two of which are relied upon by Plaintiff.

Section 1710(3) defines deceit as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Section 1710(4) adds that deceit can also be defined as "[a] promise, made without any intention of performing it."

Plaintiff does not dispute that these two causes of action are based in fraud, and thus must meet the higher pleading standard set out in Fed. R. Civ. P. 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." As explained in the court's order dismissing the first complaint, and discussed at length by the parties in their briefs, "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). Likewise, the circumstances alleged by a plaintiff must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). The heightened pleading standard also avoids unnecessary reputational harm and excessive costs of litigation. Id. at 1125.

**III. DISCUSSION**

The FAC fails to state a claim for fraudulent deceit for the same reasons the original complaint failed to state a claim for false promise. As with the false promise claim, to establish fraudulent deceit Plaintiff would need to show that at the time the contract was made, Cooper intended to conceal the rescission of the ITAR. In furtherance of this showing, Epitech would have to provide specific facts indicating that Cooper "willfully deceive[d]" Epitech "with intent to induce" Epitech to make the purchase. Cal. Civ. Code § 1709.

In the first complaint, Epitech conclusorily alleged that (1) Cooper promised to lower the contract price after the ITAR was lifted, (2) that Cooper never intended to perform, (3) that Cooper intended Epitech to rely on the promise, (4) that Epitech relied on the promise, and (5) that Epitech was harmed.  Similarly, the FAC states that Cooper "had no intention of performing" on the promise, that the "promise was made with the intent to induce EPITECH to issue a purchase order," that Epitech ordered the products in reliance on the promise, and that Epitech was harmed by Cooper's actions.  While it has restated its causes of action in different, conclusory terms, Plaintiff has provided no additional factual allegations to buttress its theory of concealment of rescission of the ITAR.[1]

In its opposition, Plaintiff attempts to lay out how it has met the "who, what, when, where, and how" standard set forth in Cafasso, 637 F. 3d at 1055.  First, Plaintiff misquotes Cafasso, leaving out the requirement that it must plead the "when" of the misconduct.  This omission is only significant to the extent Plaintiff attempts to argue that under the "suppression of fact" definition of fraudulent deceit listed in Cal. Civ. Code § 1710(3), Cooper could be held liable for concealing the rescission of the ITAR even if it only decided to do so after the original purchase order, but before a subsequent purchase order.  Even assuming arguendo that § 1709 liability would be conceivable under that set of circumstances, the claim would still be dismissed because Epitech has not identified when the ITAR was rescinded or when Cooper allegedly formulated its plan to conceal the rescission.

More broadly, the "what" and "how" sections of Plaintiff's memo explain only the circumstances surrounding the breach of contract, still providing no factual context for Cooper maintaining a pre-existing scheme to keep the contract price at $5.45 after the ITAR's rescission. Instead, Plaintiff avers, in conclusory fashion, that Cooper never intended to drop the price.  For

---

[1] The court's first dismissal order pointed out that Epitech's complaint provided two alternative theories:  it alleged that either the ITAR never existed and Cooper lied about its existence, or that the ITAR did exist but was rescinded, and Cooper never notified Epitech or lowered the price.  Here, Plaintiff seems to settle on the second theory.

example, in explaining "how" the fraud occurred, Plaintiff states that Cooper made the promise concerning a price drop, then simply concludes: "This promise was false made [sic] without the intention of performing it.  At the time Cooper Defendants made this promise Cooper Defendants had no intention of performing it."  Pl. Opp. at 3.  Without more, Plaintiff's theory cannot survive past the pleading stage.

**IV. CONCLUSION**

As emphasized in the court's previous order, Rule 9(b) is meant to prevent litigation of baseless charges and to protect society and the courts from the social and economic costs of litigating fraud issues lacking serious foundation.  See Kearns, 567 F.3d at 1125.  While Plaintiff repeatedly and vigorously claims Cooper entered the contract negotiations with a plan to conceal the rescission of the ITAR, it once again fails to state any facts supporting that contention.  For that reason, Plaintiff has failed to meet the pleading standard of Rule 9(b), and the motion to dismiss is GRANTED without leave to amend at this time.  Should discovery disclose a basis for Plaintiff seeking to reallege fraud, then, at that juncture, Plaintiff may seek to amend the operative complaint.

**IT IS SO ORDERED.**

DATED: January 10, 2012

Jeffrey T. Miller
United States District Judge